UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CATANA YEHUDAH,

               Plaintiff,                           **COMPLAINT**

-against-

                                               **JURY TRIAL DEMANDED**

JLJ IV ENTERPRISES INC., and
TARIK (LAST NAME UNKNOWN),
in his individual capacity.

               Defendants.
------------------------------------------------------------x

Plaintiff, Catana Yehudah ("Plaintiff") through her counsel, SLATER SLATER SCHULMAN LLP, hereby submits this Complaint and complains of the Defendants, upon information and belief, as follows:

## NATURE OF CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), The New York City Human Rights Law ("NYCHRL"), the New York State Human Rights Law ("NYSHRL"), and the New York Labor Law ("NYLL"), and seeks damages to redress the injuries Plaintiff suffered as a result of being exposed to sexual discrimination, sexual harassment, a hostile work environment, retaliation, and deprivation of overtime compensation.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this action involves a federal question under Title VII of the Civil Rights Act. The Court also has supplemental jurisdiction over the City and State causes of action.

3. Venue is proper in this District base upon Defendants' place of business being subject to personal jurisdiction within Queens County, State of New York, within the Eastern District of New York. 28 U.S.C. §1391(b).

## PROCEDURAL PREREQUISITES

4. On or around April 6, 2021, Plaintiff filed a complaint with the EEOC against Defendant employer as set forth herein.

5. On or about May 25, 2022, Plaintiff received a Right to Sue Letter from the EEOC.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

## PARTIES

7. Plaintiff is a single Black female who resides in the Bronx within the State of New York.

8. Defendant JLJ IV Enterprises, Inc. (Hereinafter "Defendant" "Defendants" and "JLJ") was and is a duly authorized domestic corporation doing business in the State of New York.

9. Upon information and belief, Defendant solicits business within the State of New York.

10. Upon information and belief, Defendant derives substantial revenues from goods used or consumed or services rendered in the State of New York.

11. Defendant is also an "employer" within the meaning of the NYSHRL.

12. Defendant is also an "employer" within the meaning of the NYCHRL.

13. Defendant Tarik (Last Name Unknown) (Hereinafter "Defendant," "Defendants," and "Tarik") was and is a supervisor for Defendant Rehabilitation.

14. Upon information and belief Defendant Tarik has hire and fire authority over Defendant Rehabilitation personnel.

15. At all times material, Defendant Tarik had supervisory authority over Plaintiff.

16. Defendants are also "employers" within the meaning of the NYSHRL.

17. Plaintiff is an "employee" within the meaning of the NYSHRL, NYCHRL, and Title VII.

**FACTS**

18. At all times relevant, Ms. Yehudah ("Plaintiff") resides in Bronx County and is an individual female.

19. That at all times herein mentioned, Defendant JLJ was and still is a domestic business corporation organized and existing by virtue of the laws of the State of New York.

20. Plaintiff started her employment with JLJ IV Enterprises, Inc. on or about March 2019.

21. Plaintiff was hired as a flagger and worked as fire watch.

22. As a flagger, Plaintiff oversaw traffic control and made sure the engineer did not hit anyone.

23. On fire watch, Plaintiff would watch the plates after they were welded to make sure there was no smoke or fire.

24. Plaintiff was the only woman working at Defendant employer at the time.

25. Plaintiff started experiencing sexual discrimination and harassment six (6) months after she was hired.

26. On or about September 2019, Plaintiff was assigned to work at a site located at 34th Street and 8th Avenue in Manhattan.

27. Her supervisor at that job site was Defendant Tarik (Last Name Unknown).

28. There, a co-worker named Carlos Lopez ("Lopez") pinched Plaintiff on her thigh.

29. Plaintiff told Lopez not to touch her like that ever again. Plaintiff stopped talking to Lopez after this incident.

30. When Plaintiff started working at this job site, Defendant Supervisor Tarik told Plaintiff she could not work on the weekends anymore.

31. Prior to this, Plaintiff had worked overtime on weekends every week without issue.

32. Plaintiff expressed that she wanted to work weekends and asked why she could not work weekends anymore.

33. Defendant Supervisor Tarik stated, "Because I said so."

34. Defendant Supervisor Tarik did not forbid any of Plaintiff's male co-workers from working weekends.

35. On or about February 2020, Plaintiff was transferred to a job site located at 125th Street and Lexington Avenue in Harlem, New York.

36. Defendant Supervisor Tarik was not Plaintiff's supervisor at this job site. Plaintiff did not have any issues at this job site and was working weekends again.

37. Sometime afterward, Plaintiff was transferred to a job site by the Brooklyn Navy Yard on Flushing Avenue and Adelphi Street.

38. Defendant Tarik was again Plaintiff's supervisor at this job site.

39. The harassment resumed.

40. Defendant Supervisor Tarik prohibited Plaintiff from working weekends as soon as she started working at the same job site as him.

41. Plaintiff worked fire watch solely during her overtime hours on average for one hour per day, six days per week, for two years straight without receiving the overtime wages owed to her.

42. Although Con Edison paid Defendant JLJ for the fire watch service that Plaintiff provided, she was never compensated for her overtime work.

43. On each occasion that Plaintiff worked fire watch, she was required and did in fact sign in to Defendant JLJ's fire watch log book.

4

44. Lopez was also working at this job site.

45. On one occasion, Lopez approached Plaintiff with an erection and rubbed his body up against hers.

46. A fellow co-worker, Omar Thompson ("Thompson"), witnessed this interaction and suggested to Plaintiff that she start having lunch with him in order to avoid Lopez.

47. The harassment did not end at this time.

48. After this, Lopez continuously harassed Plaintiff through text saying:

- "Boo, we're [sic] are you? I don't see you"

- "Do you come tomorrow boo? I miss you already"

- "I love you"

- "Good morning beautiful lady, I saved a parking space for your. Ef I'm sleeping wake me up."

- "Boo I eat you all you lollipop"

- "I want to stick my dick up your big black ass"

49. Lopez would also take pictures of Plaintiff and send them to her telling her he was watching her.

50. Plaintiff asked Lopez to stop sending her sexual and harassing messages, but the harassment continued.

51. Lopez would also approach Plaintiff at work and whisper sexual things in her ear.

52. Lopez also stalked Plaintiff at work and once knocked on her window while she was eating lunch.

53. Plaintiff asked Lopez to stop and that she would report him if he did not. Lopez responded that nobody would believe her.

54. The sexual texts and harassment at work made Plaintiff feel uncomfortable and uneasy at Defendant employer.

55. One of Plaintiff's responsibilities was to fill the cooler with ice so that everyone on the job could have cold water. During the day, Plaintiff would regularly get water from the cooler in the truck.

56. On or about July 2020, Plaintiff went to get water from the cooler in the truck. When she went, she saw alcohol in the cooler. Plaintiff's supervisor and foreman at the time, Manny Sosa ("Sosa"), noticed that Plaintiff saw his alcohol in the cooler and got upset with her and raised his voice.

57. Plaintiff told Sosa not to speak to her in that way. After this incident, Sosa prohibited Plaintiff from going into the truck.

58. The harassment did not end at this time.

59. On or about August 2020, Plaintiff was working with a co-worker named Nelson (Last Name Unknown) and an employee from another company when a co-worker drove by and waved.

60. Nelson yelled to the co-worker who drove by to pull over and take Plaintiff home as if she were a prostitute.

61. Upset, Plaintiff cried and reported the incident to Defendant Supervisor Tarik through text message.

62. Defendant Supervisor Tarik never responded to her message, did not acknowledge the incident, and never remedied the situation.

63. Nelson frequently made sexual comments to Plaintiff like "I could take her home and sleep with her."

6

64. Plaintiff reported these inappropriate sexual comments to Defendant Supervisor Tarik, who said he did not want to talk about it.

65. Defendant employer never provided any female porta potties for Plaintiff to use on the job site. Thus, Plaintiff was forced to go find a bathroom to use.

66. When Plaintiff returned from the bathroom, Sosa would get upset and complain that Plaintiff was taking too much time in the bathroom, but Plaintiff often had to walk a couple of blocks to find a restroom to use.

67. Sometimes in front of the other co-workers, Sosa would laugh and tell Plaintiff to just pee in the park.

68. Plaintiff would quietly walk away crying while looking for the bathroom.

69. Plaintiff did not feel like she could report this to anyone since Defendant Supervisor Tarik did not provide Plaintiff with support for her previous concerns, and because the individual harassing her and perpetuating a hostile work environment was the foreman and supervisor, Sosa.

70. One day on or about October 2020, Plaintiff was forced to wait outside in the rain while the rest of the men sat in the truck that Sosa had prohibited her from entering.

71. Plaintiff asked why she was the only one waiting outside and her male co-workers responded that she had to stand outside.

72. Plaintiff's clothes became wet, and she went into her car to change her clothes because she was shivering cold.

73. Plaintiff had to change her clothes in her car because Defendant did not provide women's restrooms on the job sites.

74. While Plaintiff was changing her clothes in her car, she witnessed her supervisor and foreman, Sosa, taking pictures of her changing.

75. Plaintiff's co-worker, Thompson, told Plaintiff that Sosa was indeed taking pictures of her and even tried to zoom in. Thompson further told Plaintiff that Sosa showed the pictures to him and Lopez.

76. Plaintiff was already feeling hurt and cold from being forced to stand in the rain, and after learning about Sosa's actions, felt violated and horrified.

77. Plaintiff immediately texted Walter (Last Name Unknown) ("Walter"), an Engineer, about the incident and expressed that she wanted the situation addressed but that she was also worried about being retaliated against.

78. On the same day, Plaintiff also reported the incident to her supervisor, Tommy (Last Name Unknown) ("Tommy"). Plaintiff expressed that she felt creeped out and embarrassed that a man was taking pictures of her.

79. The harassment did not end at this time.

80. Instead of remedying the situation, Tommy questioned why Plaintiff was sitting in her car on the job.

81. The day after Plaintiff complained to Tommy and Walter about Sosa's actions, Sosa told Plaintiff to go home and that she was laid off for three (3) days.

82. Plaintiff was not paid for these three (3) days.

83. The harassment did not end at this time.

84. After this, Sosa told Plaintiff's co-workers not to speak to Plaintiff. As a result, nobody communicated Plaintiff's assignments or working hours to her. Plaintiff was forced to communicate with Lopez, who was already harassing her, in order to get her schedule.

85. On or about January 2021, another co-worker, Leon Mack ("Mack"), started cursing and insulting Plaintiff.

86. Mack frequently verbally abused Plaintiff, calling her "a black bitch", "a dirty bitch", "a black dirty bitch", and said "I hate that bitch."

87. Plaintiff reported these racially and sexually charged insults to the acting foreman at the time, Marcel (Last Name Unknown) ("Marcel").

88. Marcel responded that he could not do anything because he was only the acting foreman and was filling in for Sosa.

89. At her breaking point, Plaintiff went to her doctor and requested that he refer her to a therapist. Plaintiff was also prescribed anti-depressants to help her cope with what she was experiencing at work.

90. After this, Plaintiff called her union in tears to report everything she was experiencing.

91. After she called her union, the supervisors at Defendant employer came down to ask Plaintiff what happened.

92. One of her supervisors, Tommy, asked Plaintiff why she didn't tell him what was going on. Plaintiff explained that she did report to him and that in the past, when she reported what she was going through, instead of remedying the situation, she was suspended.

93. On or about March 3, 2021, Plaintiff had a meeting with the owner of Defendant employer, Ray (Last Name Unknown) ("Ray") and reported all the discrimination she was experiencing. Ray was very critical, unsympathetic, mean, and abusive.

94. At the meeting, Plaintiff felt afraid and unsupported.

95. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

96. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

97. Plaintiff has further experienced severe emotional and physical distress.

98. Upon information and belief, the discrimination will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing future harassment.

99. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against the Defendants.

100. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

101. The above are just some examples, of some of the discrimination to which Defendants subjected Plaintiff.

102. Defendants exhibited a pattern and practice of discrimination.

**AS A FIRST CAUSE OF ACTION**
*(Not Against Any Individual Defendants)*

103. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

104. Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act, 42. U.S.C. § 2000e(f).

105. At all relevant times, Defendant employed in excess of fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

106. Defendant created and maintained a hostile work environment based on sex and sexual harassment.

107. But for Plaintiff's sex, Plaintiff would not have been discriminated against.

108. Defendant's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff' rights.

109. As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, in forms including, but not limited to, lost income, lost future earnings, severe emotional distress, mental anguish, pain, and suffering.

**AS A SECOND CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER NEW YORK STATE LAW**

110. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

111. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

"For any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this article, or attempt to do so."

112. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding and abetting, inciting, compelling, and coercing the discriminatory conduct.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER NEW YORK STATE LAW**

113. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

114. Executive Law § 296 provides that:

"1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

115. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff through gender/sex/sexual discrimination, hostile work environment based on sex, and sexual harassment.

116. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

<b><u>AS A FOURTH CAUSE OF ACTION<br>UNDER THE NEW YORK CITY LAW</u></b>

117. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

118. The Administrative Code of City of NY § 8-107 [1] provides that:

"It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation, uniformed service or immigration or citizenship status of any person: … (2) To refuse to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment."

119. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff

because of her gender/sex, engaging in sexual harassment, and creating a hostile work environment.

120. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

121. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

122. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

123. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

124. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

125. The New York City Administrative Code Title 8, §8-107 (1) e provides that it shall be unlawful discriminatory practice: "For an employer to discharge or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter."

126. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107 (1)(e) by discriminating against the Plaintiff

13

because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE SUPERVISORY LIABILITY

127. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

128. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

"a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section. b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) The employee or agent exercised managerial or supervisory responsibility; or (2) The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

129. Defendants violated the above section as set forth herein.

## AS AN EIGHTH CAUSE OF ACTION FOR OVERTIME VIOLATIONS UNDER THE NEW YORK LABOR LAW

130. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

131. At all relevant times, Defendant JLJ was subject to the overtime wage requirements set forth in Article 19 of the NYLL.

132. Pursuant to NYLL § 650 *et seq.* and 12 NYCRR 142-2.2, non-exempt employees are required to be paid one and one-half times the employees' regular rate of pay for any hours in excess of forty (40) worked in any workweek.

133. Defendant JLJ expected Plaintiff to work more than forty (40) hours a week, and Plaintiff regularly worked more than forty (40) hours a week throughout her employment, including her time performing fire watch.

134. At no time has Defendant JLJ paid Plaintiff a rate of one and one-half times their hourly rate of pay for all of the hours she worked in excess of forty (40) hours per week during her time performing fire watch.

135. Defendant JLJ willfully, knowingly and intentionally has not, and continue not to, compensate Plaintiff for overtime at a rate of one and one half times her hourly rate of pay for all of the hours she worked in excess of forty (40) hours a week during her time performing fire watch.

136. As a result of Defendant JLJ's violations of the law and failures to pay Plaintiff's required regular and overtime wages, Plaintiff has been damaged and is entitled to recover from Defendant JLJ all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to NYLL § 198 and 12 NYCRR 142-2.2.

137. As Defendant JLJ did not have a good faith basis to believe that their failure to pay overtime wages to Plaintiff was in compliance with the law, Plaintiff is entitled to additional damages equal to one hundred percent of the total amount of wages due, pursuant to NYLL§ 198.

## JURY DEMAND

The Plaintiff demands that the foregoing causes of action be tried before a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, demands judgment against Defendants in an amount to be determined at trial plus interest, including, but not limited to, all emotional distress, back pay and front pay, punitive damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: July 29, 2022
      Melville, NY 11747

                                SLATER SLATER SCHULMAN LLP

                                John C. Luke, Jr.
                                445 Broad Hollow Road, Suite 419
                                Melville, NY 11747
                                *Attorneys for Plaintiff*

**DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.